JOHN RICE JONES' ADM'R v. WILLIAM P. JONES AND ANOTHER.

On the death of the wife, her estate became entitled to one-half of the community property, but her heirs can claim and finally hold only such portion as may remain after payment of all just debts against the community.

Where the wife dies, and letters of administration upon her estate are not taken out, the husband represents the community, as surviving partner, in so far that as long as a community debt is kept up as a subsisting claim against the husband, it remains a claim against the community.

The heirs of the wife, dying first, without administration, cannot sustain an action of trespass to try title for any part of the community property, against the administrator of the husband, afterwards dying, as long as there is any subsisting debt against the community.

Appeal from Fayette. John Rice Jones, then intermarried with Ruth Mary Jones, acquired a league of land as a headright. On the 21st of March, 1837, he made a contract with

Edwin Waller, to pay a certain amount of money on the 1st of February, 1838. On the 5th of September, 1837, Ruth Mary, the wife, died, leaving the present plaintiffs, her children. There was no administration on her estate. Judgment was obtained against Jones by Waller, on said contract, in 1838, executions issued regularly until the 11th of August, 1841 ; 1842, assigned to Herndon.

Jones, the surviving husband, sold all of the league except 1414 acres, and died in 1845, leaving a widow and children. Administration first granted on his estate January 26th, 1846 ; administrator died without advertising for presentation of claims ; June, 1849, administrator *de bonis non*, and advertisement for presentation of claims as required by law ; November Term, 1848, the Probate Court of Fayette County set apart 47 acres of the league, (with other three acres,) as a homestead to the widow and children. August 2nd, 1852, the judgment was presented to the administrator, and by him rejected ; suit commenced thereon same day against the administrator of Jones, and judgment finally recovered for $4438 72 and costs.

This suit was commenced February 13th, 1854, by two of the children of John Rice and Ruth Mary Jones, as the heirs of the said Ruth Mary, against the administrator *de bonis non* of the said John Rice Jones, to recover the community interest of their mother in said league of land, limiting their claim to the unsold part thereof, exclusive of the 47 acres set apart to the widow and children. The petition was endorsed as in actions of trespass to try title. One of the plaintiffs was a minor. There was not property enough belonging to the estate of John Rice Jones to pay the said debt of Herndon, without the land in controversy. The land sold by the surviving husband off the league, was worth $2 per acre. The plaintiffs alleged that Herndon's claim was barred as against the estate of Ruth Mary Jones. All the facts were agreed to and the case submitted without a jury. The defendant, in

what he called a plea in reconvention, prayed that the order of the Probate Court, setting aside the homestead, be vacated, &c.    Judgment for the plaintiffs.

*Hamilton, Chandler & Anderson,* for appellant.    The wife or her representatives, although their distinct interest in the community attaches at the dissolution of the marriage, subject to their right to renounce and be exonerated from the payment of the community debts, have nothing to claim out of the *acquets et gains* until such debts are paid.    (Lawson v. Ripley, 17 La. R. 238 ; Hart v. Foley, 1 Rob. R. 378 ; Fortier v. Slidell, 7 Id. 378.)

How then could the Statute of Limitations begin to run in favor of the heirs against creditors?    And what else could the creditor in this instance have done save to pursue the surviving partner ?    The heirs had nothing of the community, and claimed nothing.    The creditors of the conjugal partnership occupy the same position as creditors of all other partnerships.    They are not required to take out letters of administration upon the estate of a deceased partner, in order to secure their claims against the partnership property.    (Angell on Limitations, p. 280, Sec. 8 ; Story on Partnership, p. 496, 506, Sec. 324, 329.)

*Webb & Harcourt,* for appellee.    The claim of Herndon was contracted on the 21st day of March, 1837, and Mrs. Jones died on the 5th day of September of the same year, so there is no pretence that the debt was not contracted during the coverture.    The league of land was community property, and at the death of the wife Ruth Mary, one half of the same instantly vested in her heirs.    (Heirs of Guillotte v. City of Lafayette, 5 Annual (La.) R. 382 ; Guice v. Lawrence, 11 Id. 226 ; Robinson v. McDonald, 11 Tex. R. 385.)

At the death of the wife the community was dissolved and the husband had no longer a right to manage its concerns.

(Succession of Canonge, 1 Annual (La.) R. 213 ; Cole's Widow v. His Ex'rs, 7 N. S. (La.) 42 ; Placeucia's heirs v. Placeucia, 8 La. R. 577 ; 9 La. R. 583 ; 7 Id. 222.)

Suppose that the creditor Herndon had been desirous of contesting the title to the land in this case, after the death of Mrs. Jones, he would have been compelled to make the heirs of Mrs. Jones parties to the suit. We can see no difference between a suit for title and one upon a community debt.

Suppose there had been an administration on Mrs. Jones estate ; that the same had been fully administered and her interest in the league partitioned to her heirs, would Herndon, after his debt had run the time necessary to bar it, have had a right to follow this property in the hands of the heirs ? Assuredly not, for they could have plead the limitation on it. It cannot be contended that there being no administration can place him in any better fix. An administration on a wife's estate is just as necessary under our system, as upon the husband's. As before stated, the wife's interest vests in her heirs, subject, it is true, to community debts ; but the death of the wife dissolves the community, and the rights of the parties to it, henceforth, become separate. Herndon, or the owner of the judgment, had it within his power to enforce an administration, and his not doing so, by applying himself or getting another to so, was his own negligence, and hence he cannot complain.

The separate property of the wife is liable for necessaries, and though the husband has the sole management of it, yet he cannot take a claim even for necessaries, out of the Statute of Limitations. (Milburn v. Walker, 11 Tex. R. 329.) How much less, then, should a suit after her death bind her heirs or prevent the bar ?

HEMPHILL, CH. J. The contest in this case is virtually between a creditor of the community and the heirs of such portion of the community as they may be entitled to, in the right

of their mother ; for, that the claim of Herndon is a debt against the community, will not admit of a question ; 'it was contracted during the existence of the matrimony, and though the wife died before the debt became due or payable, that did not make it the less a debt against the conjugal partnership. Nor is there any proof that it was contracted for the special benefit of the husband, or of his separate property, or in fraud of the rights of the wife, in the acquets and gains.

This debt stands as an established claim against the estate of the husband, who survived the mother of appellees, (but has now departed this life,) and is entitled to satisfaction out of the community property not yet sold, provided the claim of appellees, as heirs of their mother, be not superior in right or equity.

To determine the issue, it will be essential that the character and extent of the legal right of the appellees, as heirs of their mother, to the ganancial property, should be clearly understood. On the death of the wife, her estate became entitled to one-half of the community property, but her heirs, the appellees, can claim and finally hold only such portion as may remain after payment of all just demands against this community. Febrero, in treating of the division of inheritances, declares that there must be deducted all legitimate debts, which the husband, or wife with his permission, or both jointly, may have contracted on account of the conjugal partnership, and which must be paid out of the ganancial property, and that the residue only is divisible, and is what is called the inheritance. (Febrero Novissimo, Vol. 6, p. 124 ; L. 14, Tit. 20, Lib. 3 Fuero Real ; L. 207 del Estilo ; 17 La. R. 238 ; 1 Rob. R. 378 ; 7 Id. 387.)

The debts, then, of the partnership, have priority of claim to satisfaction out of the community estate ; and the residue, after the discharge of such debts, is the only portion which is subject to division between the survivor and the heirs of the deceased partner.

Nor can it be said that the creditor has lost his right to satisfaction out of the ganancial property, for the reason that no administration has been taken out on the estate of the deceased wife, nor have her heirs been sued on their liabilities fixed, and that they are now protected by the Statute of Limitations. The ganancial estate remained in the hands of the surviving husband. As survivor he had competent authority to discharge the debts of the partnership; and whether the discharge of debts, or any act which he might lawfully do as survivor, be done in his own name simply, or in his name as survivor, is immaterial. The law, for the preservation of rights, would look to the substance and not the form. In fact no such form has been adopted in practice, nor is it essential that it should. The judgment against the husband in his own name, and revived against his administrator, is just as effectual against the partnership property, as if it had been rendered against the husband as surviving partner. If proceedings were had, at Common Law, to reduce the claim of the creditor to judgment, or if the rules of procedure at Common Law were alone to govern, then suit could be brought alone against the surviving partner. But under the Spanish Law as it existed in 1838, when judgment was first recovered against the surviving husband, there is no doubt that had administration been taken out on the estate of the wife, such administrator might have been joined in the suit, and so might such administrator be now, under the rules of Equity, jointly sued with the surviving partner. (Henderson v. Kissam, 8 Tex. R.; Story on Partnership, p. 496, 506.) But this joinder is not necessary, nor will the want of such joinder impair the force and efficacy of the judgment against the assets of the partnership. Nor can the fact that the husband, since the death of his wife, has disposed of a large portion of the community property, affect the right of the creditor to satisfaction out of that which has not been sold. What were the motives or inducements to the various sales, made by the survivor, we are not informed.

Jones v. Jones.

They may have been made to discharge contracts made prior to the death of the wife, or to satisfy legitimate demands against the community. If so, it is apprehended they could not be disturbed. At all events, they cannot be assailed by the creditor Herndon. There is no pretence that they were made to defraud creditors, and consequently he would be left without redress, if his demand could not be enforced against the property which has not been alienated.

We are of opinion that the judgment against the surviving husband and his estate is a valid claim against the community property which the appellees now claim for division, and that the judgment below, in favor of appellees, is erroneous.

The defendant, by cross-petition, which he misnames cross bill, claims that a judgment of the County Court, some years since, by which a portion of this land was set apart as a homestead for the widow and children of the deceased, should be disregarded, and the land included in the homestead declared liable in the hands of the administrator for the discharge of of the claim of the creditor. This objection to the judgment of the County Court, by the creditor or administrator, should have been made in the Court which had jurisdiction of the subject matter, and in due season. The judgment cannot, years afterwards, be collaterally attacked and set at naught. Judgment reversed and cause dismissed.

Reversed and dismissed.