ELLA CARTER AND ELVIRA RUST V. JOHN H. CONNER ET AL.

(Case No. 3519.)

1. JUDGMENT — COMMUNITY PROPERTY.— A judgment rendered against a surviving husband, obtained in a suit upon a community debt, which is begun after the wife's death, is binding upon the community property, and this though the heirs of the wife are not made parties and the pleadings in the

cause fail to allege that the claim is for a community debt. Though the judgment is against the husband alone, a levy and sale of community property passes the title; and the sheriff's deed conveying the right, title, interest and claim of the surviving husband passes to the purchaser the right and title which had vested in the community.

2. CASES DISCUSSED.— Jones v. Jones, 15 Tex., 143; Stramler v. Coe, 15 Tex., 211.

3. CASES CITED AND APPROVED.— Woodley v. Adams, 55 Tex., 530; Brewer v. Wall, 23 Tex., 585; Allison v. Shilling, 27 Tex., 454; Tucker v. Brackett, 28 Tex., 336; Burleson v. Burleson, 28 Tex., 418; Good v. Coombs, 28 Tex., 50.

APPEAL from Travis. Tried below before the Hon. E. B. Turner.

Action of trespass to try title, brought by John H. Conner and his children, as the heirs of their deceased mother, Salina A. Conner, for the recovery of about twenty-two lots in the city of Austin, against Ella R. Carter and her guardian, Elvira Rust.

The defendants demurred, pleaded the general issue, and also set up special matters of defense.

During the progress of the cause Elvira Rust intervened in her own right, setting up title in herself to the entire property under certain execution sales, and prayed for judgment in her favor.

The plaintiffs demurred and answered to her petition of intervention.

Verdict, on which the court rendered a judgment for the heirs of Mrs. Conner for one-half of all the lots claimed by the plaintiffs (except four of them), and for $200 damages, and in favor of Elvira Rust, the intervenor, for one-half of all the lots (except four of them), and against Ella Carter, the defendant, for the $200 and part of the costs.

The evidence disclosed that Conner was married to Salina prior to 1862, and that she did not die until 1872. Conner executed a note to Loeb & Co. for $161.89, on December 28, 1866. Suit was brought on this note in the district court of Travis county, and a judgment was obtained on it against Conner for $271 gold, on October 13, 1873. Execution was duly issued and levied on all the lots in suit, and the lots, on April 6, 1875, were sold by the sheriff under this execution and purchased by the intervenor, Elvira Rust, and a sheriff's deed was duly executed to her, under which she, in her pleadings, claimed to be the owner of the lots.

The court charged as follows on this question:

"The intervenor's claim is based on a purchase made by her at sheriff's sale under two executions. The sale was by virtue of the judgment in favor of Loeb, rendered October 13, 1873; but the proof shows that the debt was contracted before the death of Mrs. Conner, and the debt was therefore a debt against the community

estate of Conner and wife. The other judgment under which she purchased was against Conner, but was not a debt against the community, and a sale under it would not affect the children's interest. The sheriff levied both these executions on all the lots in controversy, and sold them upon both, making a deed for them to Miss Rust, and applying the proceeds to the extinguishment of both judgments."

"This sale cut off all title in John H. Conner. It now remains for me to charge you upon the effect of the Loeb judgment, execution, sale and deed thereunder to Miss Rust, as it affects the heirs of Mrs. Conner. At the time the Loeb judgment was rendered against Conner, October 13, 1873, was Mrs. Conner dead? If she was, then I charge you that the title of Mrs. Conner had vested in her heirs, and these lots being community property owned by them at the time of her death, then the one-half interest in the lots passed to her heirs, and the debt not having become a lien on the property at the time of her death, a sale under the Loeb judgment rendered against Conner after the death of his wife could not affect the interest of the heirs, and was, as to their half interest, ineffectual; and if there is no other obstacle to their recovery than this sale, then they are entitled to the one-half interest in the lots (except as to lots 1, 4, 7 and 8 which were bought by D. L. Cross), and to such sum for the rents thereof as their half interest entitles them to under the evidence, from the date of the death of Mrs. Conner."

The defendant asked the following instruction, which was refused:

"If you believe, from the evidence, that the Loeb judgment was rendered on a community debt of Conner and his deceased wife, Salina, that is, a debt contracted by Conner before her death, then the levy, sale and sheriff's deed made under said judgment divested the plaintiffs of all interest in the property described in the petition."

*Hancock* and *North*, for appellants, cited: Pasch. Dig., art. 4642, and note 4; Jones v. Jones, 15 Tex., 143; Wenar v. Stenzel, 48 Tex., 489; Dawson v. Holt, 44 Tex., 174; Lumpkin v. Murrell, 46 Tex., 51; Tucker v. Brackett, 28 Tex., 336, and 25 Tex. Sup., 199; Burleson v. Burleson, 28 Tex., 383; Allison v. Shilling, 27 Tex., 450; Brewer v. Wall, 23 Tex., 585, and other cases.

*D. G. Wooten*, also for appellants.

*Cullen, Jones & Trigg*, for appellees, cited: Pasch. Dig., arts. 4648, 4649, 5494; Green v. Rugely, 23 Tex., 539; Carroll v. Carroll,

20 Tex., 732; Gaut v. Reed, 24 Tex., 56; Thompson v. Cragg, 24 Tex., 582; Pasch. Dig., art. 3795.

WILLIE, CHIEF JUSTICE.— The important question in this case arises upon the refusal of the court below to give the special instruction asked by the counsel of appellants. That instruction was as follows: "If you believe, from the evidence, that the Loeb judgment was rendered on a community debt of Conner and his deceased wife, Salina, that is, a debt contracted by Conner before her death, then the levy, sale and sheriff's deed made under said judgment divested the plaintiffs of all interest in the property described in the petition."

The suit in which the Loeb judgment was obtained was not commenced until eleven months after the death of Mrs. Conner, and it was in the ordinary form of a suit on a promissory note; it was not charged in the pleading that it was upon a community debt, and the judgment against Conner was in its form the same as if he had been sued in his individual capacity.

An ordinary execution issued upon this judgment, which was levied upon the property claimed by the intervenor, and after advertisement she purchased it at sheriff's sale and received a deed which purported to convey the right, title, claim and interest of J. H. Conner in the property sold.

If these proceedings divested the children of Mrs. Salina Conner of all the community right in the property which their mother held at the time of her death, then the charge should have been given; otherwise it was properly refused.

That the survivor of the marriage may sell, convey, mortgage, or otherwise voluntarily dispose of community property for the purpose of satisfying community debts is well established by the decisions of our state, and is not controverted by the appellees in this case.

But it is contended by them that an involuntary sale of such property, under an execution issuing upon a judgment obtained in a suit upon a community debt commenced subsequent to the death of the wife, in which the children of the deceased wife were not made parties, does not divest the children of such community right. And this more especially where the claim upon which the suit is brought is not charged in the pleadings to be a community debt, and the sale was of the right, title, interest and claim of the defendant in the suit, the survivor in community.

Our court, in determining to what extent the survivor in community may make use of its assets to discharge the community debts, as also the right of creditors to enforce payment of their de-

mands out of such assets, have assimilated the marital relation in many respects to that of an ordinary partnership.

After the dissolution of a partnership by the death of one of the members (if there be two members only), the survivor winds up its business, collects its demands and pays off its debts; and for the latter purpose may make use of its means,— sell, convey, mortgage or otherwise dispose of them.

A creditor of the partnership need not, in enforcing by suit a firm debt, make any one a party to the suit, except the surviving partner. A judgment against him as such carries with it the right to an execution against the partnership property as effectually as would a judgment against the firm before its dissolution by the death of one of its members. The survivor of the conjugal partnership has all the powers of the surviving member of a commercial firm by our decisions, and is bound by all his obligations.

On dissolution of a commercial partnership the survivor keeps possession of everything. He has the legal right to the partnership effects. He is a trustee for all concerned in the partnership,— the heirs of the deceased, the creditors of the firm, and himself. Case v. Abeel, 1 Paige, 398; Parsons on Part., 441.

Suits at law must be brought against the surviving partner alone; and suits to collect debts due to the firm must be brought by him without joining the personal representatives of the deceased partner. Story on Part., 447. In equity such joinders are not prohibited.

In suits by and against the marital partnership the same rules thus far obtain; but there are some differences in the mode of pursuing remedies both for and against the partnership which have their origin in the differences that exist between the two classes of partnership, and which seem now to be pretty well recognized by our courts.

The business of the marital partnership is always conducted by the husband; all its affairs are in his name. With occasional exceptions he makes its contracts, incurs its debts, signs its notes to others, and the notes made due to it are made payable to him, and whatever is done in the way of acquiring or disposing of property is nominally done in his name alone.

Upon the death of the wife, as in case of the death of a commercial partner, the community estate becomes the property of the survivor and of the children of the deceased wife, subject to such title as vests in a surviving partner for the purposes of winding up the business of the concern.

In conveyances to or by the firm during the existence of a com-

mercial partnership, the firm name is used, or the names of all the partners; in like transactions after dissolution, the act of the survivor should show that it was intended to benefit or bind the firm.

Conveyances during the existence of the conjugal association by the firm are made by the husband alone and in his name, and those made to the firm are usually, though not universally, to him individually. Whatever he does after the death of his wife in the way of conveying property in payment of debts, or receiving it to satisfy those due the community, is done in his own name, and they are as effectually binding upon her heirs as if they were joined in the conveyances.

So in case of suits by or against partnerships, the same rule obtains. In commercial partnerships all the members must be joined; in conjugal the husband only may sue and be sued. After dissolution the surviving partner sues or is sued as such, and it must be shown that the debt is a partnership debt or claim so as to determine out of what property the judgment shall be satisfied. In this no more is required than during the existence of the partnership. And so after the death of the wife, the suit, as during her life, is against him alone, and the allegations are the same as if the suit had been brought before her death. The wife was not entitled to have notice of the action; her heirs can claim no such privilege when their interests succeed to hers. The suit, and the judgment in accordance with it, are against him alone after the death of his wife as it was before.

There is no difference between a suit upon a community debt commenced, but when judgment is not obtained till after her decease, and one when the suit and judgment both occur subsequently to her death.

No one has ever claimed that in the former case, at her death, the heirs or administrator of the wife should be made parties or the suit would abate. If this is not necessary, no reason can be urged why, in an original suit commenced after her death, they are necessary parties defendant.

These views lead us to the inevitable conclusion that a judgment thus obtained against the surviving husband is binding upon the community property, and to be enforced against it.

Our law knows of but one way of enforcing a judgment upon an ordinary debt against a living party, and that is by execution. The ministerial act of issuing it, performed by the clerk, must follow the direction of the statute, and the writ must go against the property of the defendant in the judgment. If it is not required that the

judgment shall fix the kind of property out of which it is to be sat-
isfied, the execution cannot specify it, but it must be levied of such
property as could be made liable to the payment of such a judg-
ment, or a judgment rendered upon such a demand.   Although the
judgment is against the husband alone, it is for a community debt;
and as in the life-time of the wife an execution upon it would have
been leviable upon the community property, so after her death the
same kind of levy would be proper.   As in her life-time, so after
her death, the execution would command the sheriff to levy on the
property of the husband, and the levy, sale and deed to the pur-
chaser would show that all these passed only the right, interest, title
and claim of the husband, yet after her death, as well as before it,
carried the community interest of both the husband and the wife.

The right, title, interest and claim which the husband has in the
property in the life-time of his wife, so far as the payment of debts
is concerned, is no more than it is after her death.   He owns the
half, and can manage and dispose of all in either case for such pur-
poses.   We have seen that even in commercial partnerships the
survivor has a legal right to the whole assets which may be sold in
payment of partnership debts; the legal right of the husband is
fully as strong, and in selling it all the partnership or community
title passes to the purchaser.

Although a case precisely like the one in hand has never been
authoritatively passed upon by this court, some which bear a strong
analogy to it have been decided, and the reasoning of the court in
such cases will most certainly lead to the conclusions we have
already announced.

The case of Jones v. Jones, 15 Tex., 143, treats the connubial
partnership as resembling that of a commercial one in almost every
respect, except that in a suit against the surviving husband the
judgment against him in his own name is just as effectual as if it
had been rendered against him as surviving partner.   That, whilst
the heirs of the deceased wife might have been made parties, their
joinder was not necessary.   That case is precisely like the present
down to the rendition of the judgment and the issuance of execu-
tion.   Yet the court held it a good judgment, to be satisfied of the
community effects.   If so, it was to be satisfied in the manner
pointed out by law, i. e., by execution, or in case of death by pro-
ceedings in the probate court against the administrator of the de-
ceased husband.   Before the execution could be satisfied the
husband died, and the judgment went into the probate court for
satisfaction, and this court held that then it could be enforced

against the community property.   If the theory of the appellees is correct, that the representatives of the wife should have been joined in the suit, or no judgment binding on the community could be had, then the decision of Jones v. Jones is wrong, and the judgment being void as to the wife's heirs could not have been enforced in the probate court, as decided in that case.   On the contrary, if Chief Justice Hemphill was correct in the above cited case, the judgment was enforcible against the community estate in any manner known to the law provided in such cases.

The only ground left appellees, then, is that the levy and sale were of Conner's interest in the property; we have shown that this included the entire interest till the debts were paid.   So in the case cited, the judgment was against Jones alone.   It was presented to his administrator as a claim against him alone; it was rejected and established as such, and if a sale of the land had occurred to satisfy it, this would have been of all the right, title and interest of Jones' estate in the land.

The doctrine that a conveyance of the personal interest of the husband in the community property, after the death of his wife, carries the title both of himself and the wife's heirs, when there exists an incumbrance upon the property which is removed by the conveyance, is well established in this court.   Stramler v. Coe, 15 Tex., 211.   If the voluntary conveyance of his individual interest, under such circumstances, conveys the entire community right, there is no reason why the involuntary conveyance should not have the same effect to remove a judgment lien.

In Claiborne v. Tanner, 18 Tex., 68, this court sanctioned a charge of the district judge which, in effect, held that a levy and sale of the husband's interest in community property, made under a judgment against him alone after the death of the wife, the cause of action being a community debt, conveyed the interest both of the husband and the heirs of the wife, and so decided.   The same doctrine is sustained in Primm v. Barton, 18 Tex., 206; Higgins v. Johnson, 20 Tex., 389; Soye v. McCallister, 18 Tex., 80; Soye v. Maverick, id., 100.

It is useless to cite further authorities to sustain our views on this question, but the following, if examined, will be found to be in perfect accord with many of these views, and to sustain them in a greater or less degree, viz.: Brewer v. Wall, 23 Tex., 585; Allison v. Shilling, 27 Tex., 454; Tucker v. Brackett, 28 Tex., 336; Burleson v. Burleson, id., 418; Good v. Coombs, id., 50; Adriance v. Brooks,

13 Tex., 279; Lumpkin v. Murrell, 46 Tex., 51; Dawson v. Holt, 44 Tex., 174; Woodley v. Adams, 55 Tex., 530, 531.

In the last cited case this court strongly asserts the doctrine of this opinion in reference to suits and judgments against the survivor in community, applying it to a case where the wife occupied that position, and say that judgments rendered for or against such survivor would be as binding upon those claiming through the deceased member as though such heirs were parties to the record.

The act of 1856, in reference to the administration of the community estate by the survivor (Pasch. Dig., art. 4648 *et seq.*), and all subsequent acts on the subject, were enabling acts intended to enlarge the powers of the survivor, and to give him or her the same control over the community, after the death of one connubial partner, as before. So far as control for the purpose of payment of community debts is concerned the act was unnecessary, and has not interfered with the right already possessed by the survivor for that purpose.

Nor is any argument against the positions assumed by us to be drawn from the provisions of the marital laws, that upon the dissolution of the marriage by death the interest of the deceased descends to her children. It descends like all other estates, subject to the payment of debts; like a partnership estate, subject to the right of the surviving member to hold and use it for the satisfaction of firm demands. What the heirs of the deceased spouse receive is the remainder of the interest of such spouse after all the community debts have been paid.

We conclude that by the sale under the Loeb judgment all the community interest, both of John H. and Salina Conner, passed to the intervenor, and she obtained full title to it, and the court should have given the special instruction asked by appellant's counsel.

As this decision would, upon the same state of facts, inevitably produce a verdict and judgment against the appellees, the other points raised can be of little or no practical importance upon another trial, and we give no opinion upon them. For the error above stated the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered June 22, 1883.]

Associate Justice WEST did not sit in this case.